IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | SUPERSEDING |
| | : | |
| v. | : | 1:19CR54-1 |
| | : | |
| STEVE BRANTLEY SPENCE | : | |

## Trial Brief

NOW COMES the United States of America, by Matthew G.T. Martin, United States Attorney for the Middle District of North Carolina, through the undersigned Assistant United States Attorneys, and respectfully submits its trial brief in the above-captioned matter.

## Charges

The defendant is charged in a four-count superseding indictment with carjacking, in violation of 18 U.S.C. § 2119(1); interstate transportation of a stolen motor vehicle, in violation of 18 U.S.C. § 2312; interstate travel with intent to commit a crime of violence against a spouse or intimate/dating partner, in violation of 18 U.S.C. § 2261(a)(1); and brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). All offenses are alleged to have occurred on December 3, 2018.

## Anticipated Evidence

On December 3, 2018, at approximately 10:09 a.m., Officer Tuft-Williams of the Virginia Beach Police Department (VBPD) responded to a call for service at 4785 Alicia Drive, Apartment 325, in Virginia Beach, Virginia. Upon arrival the officer made contact with 32 year-old Denisha De'Sha Hughes, who was lying in the back of an ambulance with EMS personnel. Hughes advised the officer that she had been living at that address since October 2018 with her boyfriend, Steve Brantley Spence. On the morning of December 3, 2018, Hughes got into an argument with Spence. While she was getting dressed, Spence wrapped his arm around her neck and proceeded to "choke her out." Hughes recalled that this was at approximately 6:40 a.m. Hughes woke up at 7:12 a.m. and found that her car keys, cell phone, and vehicle were missing. When officers arrived Spence was not on scene. Two of Hughes' minor children were present during the incident, a seven-year-old and a six-month-old. Neither was harmed. Police noted visible injuries to Hughes, including a cut above her left eyebrow, swelling underneath both eyes, a red mark on the corner of her mouth, and bruising on the right side of her neck.

Spence was charged by the VBPD with the felonies of strangulation, grand larceny (two counts), and the misdemeanor of assault on a family

member.  The vehicle, a 2015 Mercedes Benz ML350, license plate number 4EVAMAC, VIN# 4JGDA5JB1FA574150, was entered into NCIC as stolen. The vehicle was valued at $35,000.

Later that day, Hughes told police she discovered a document in Spence's handwriting at the apartment.  The document appeared to be a list.  Included on the list were plans to: kill Denisha (Hughes); secure car and pick up weapons; travel to NC; Durham Ashley's house (kill Ashley and her parents); Greensboro Smith High School (kill Arielle and Mason); rest; and travel to Maryland and find Jasmine (kill Jasmine).  At the bottom of this document was the term "hit list" with the names Ruff McNeill (Oklahoma), Antonio Thomas, Diane Thomas, May Jones, Ricky Jones and his wife, and Kim Gay.

That same day, Officer D.K. Evans of the Greensboro Police Department was working as a School Resource Officer at Ben L. Smith High School located at 2401 South Holden Road in Greensboro.  At approximately 12:40 p.m., Evans received a notification reference an armed man in the cafeteria of the school.  Evans immediately left his office and headed towards the cafeteria.  As he exited the doors to the school and directed students to return to the school, Evans noticed a black man armed with two handguns running in the courtyard from the cafeteria.  The man, later identified as Steve Brantley Spence, was

3

described as having facial hair, wearing a gray hoodie and dark jeans, and carrying a black book bag. Evans drew his service weapon and ordered Spence to drop the handguns. When Spence saw Evans he continued to run towards the school's tennis courts, then made a right turn and ran towards the school's football stadium. Evans caught up with Spence near Vanstory Street and ordered him again to drop the handguns. Spence was slow to do so, first dropping one of the handguns, and then the second one.

Spence finally dropped to the ground but resisted attempts to be handcuffed and had to be tazed. The firearms recovered from Spence were a Jimenez Arms 9mm handgun, model J.A. Nine, serial number 004695, and an Armscor of the Philippines .38 caliber handgun, model M1911-A1 FS, serial number CIT009091. Neither firearm had a round chambered but both had fully loaded magazines. In the book bag Spence was carrying, officers recovered eight boxes of ammunition – three boxes of Winchester 12 gauge buckshot, one box of Winchester 12 gauge rifle slugs, one box of Aguila .38 super A+P, two boxes of Winchester .38 super auto +p, and one box of Hornaday Zombie Max Bullets. Search incident to arrest officers found car keys, a wallet, and a second loaded magazine for the .38 caliber handgun.

Evans then spoke with Lashonti Nicole Hines and Patrick Jordan, both employees of the school. Jordan noticed a black man walking into the courtyard from the tennis courts. Jordan went to the lobby to look for the man. Jordan then walked to the cafeteria, where he saw the man drinking from a water fountain. Jordan approached to ask if he could help him. The man asked about two individuals with the last name of King. Jordan pretended to call the names on his radio, but was actually radioing Evans. At that time, the man lifted his hoodie at the waist and displayed a handgun.

Hines noticed Jordan talking with a man in the cafeteria and so she walked up to the man and asked "how can I help you"? Hines noticed a handgun in the man's waistband. The man then brandished a second handgun and told Hines to back up. Once Hines saw the handguns she ran to the school to advise students of the threat and contacted Evans. Hines later made an announcement over the school radio warning of the threat. Hines and Jordan later identified the man as Steve Brantley Spence.

Other officers assisted after Spence's arrest. Officer J.G. Samuels assisted in arresting Spence. Spence was, thereafter, searched. While waiting for EMS to arrive, Sgt. Wimbush asked Spence if he was lost, to which he replied, "no, I was looking for Arielle King and Mason King." Wimbush asked

5

who she was, and Spence said, "she's a teacher here." Wimbush asked if she was a friend, to which Spence replied, "no, not really, no." Sgt. Wimbush asked Spence if he had a car nearby. Spence advised that he had a teal Mercedes-Benz SUV parked in the Denny's parking lot near the intersection of West Gate City Boulevard and South Holden Road. Spence said that he drove the vehicle from Virginia to Greensboro and motioned to where the keys were. Spence then stated that there was a 12 gauge shotgun in the backseat of the vehicle, along with ammunition. Spence identified the handguns as a 1911 and a 9mm. Spence advised that there was ammunition in his book bag, he estimated 125 rounds for the 1911, 15 rounds for the 9mm, and 35 rounds for the shotgun.

Recovered from the Mercedes-Benz (pursuant to a later search warrant) was a Remington Arms Company, Inc., 12 gauge shotgun, model 870 Tactical Magnum, serial number RS54748Z. The shotgun was positioned under a leather jacket. Also recovered was a gold Security Enforcement Officer badge on a black leather clip, located in a compartment of the dashboard under the HVAC controls. A Burger King bag was recovered containing a receipt "Burger King, 100 Market Drive, Emporia Virginia – 2 crois H/E/C, date 12/3/2018 at 9:32 hours."

6

Spence advised that he did not attend Smith High School, but that his son's mother taught there – formerly Arielle Jones, now Arielle King. Spence then advised, "yeah, well, I should have planned it out a little better. I should have waited for her instead of going to the school. This morning, I mean you guys might want to check with the Virginia Beach PD, I killed someone this morning in Virginia Beach. We were on a mission today and we just failed. I've got another step to make after this."

Spence referred to himself as "Jeremiah" and "Steve" interchangeably. Though he purported to have two different personas, officers reported that he never changed the tone of his voice or his demeanor. Spence denied that he was on medication, drugs, or alcohol.

In a later post-*Miranda* interview with Greensboro Detective J.J. Palmenteri, Spence admitted coming to Greensboro in an effort to kill Arielle King and Mason King. Prior to the interview Spence acted in an agitated state, pacing back and forth in the room. EMS personnel responded to the interview room in order to assess Spence's physical condition. In Detective Palmenteri's presence, an EMS responder asked Spence about what was going on and he responded that he tried to kill two people. After being cleared by

EMS and giving Spence time to calm down, Detective Palmenteri interviewed Spence after explaining his *Miranda* rights. The interview was recorded.

During his interview, Spence admitted that he came to Greensboro to confront Arielle King, the mother of his son. He explained that he felt she was keeping him from seeing his son and he encountered a school staff member as he was looking for her at the school. Spence told Detective Palmenteri that he did not intend to hurt any students and he did not need any "collateral damage."

Detective Palmenteri asked Spence about the names on the "hit list" located at Hughes' residence in Virginia, specifically his intentions regarding Ashley Neville in Durham. He claimed that another persona, "Jeremiah," wrote the list. Spence explained that Ashley is the mother of his youngest son and he initially intended to kill her and her parents. However, he talked himself out of killing Neville and her parents because then his son would be an orphan. Spence was also able to recall the other names on the list.

Spence was also able to explain to Detective Palmenteri his earlier assault upon Hughes and was surprised to learn that she was alive. He claimed that "Jeremiah" is the one who attacked Hughes.

8

When asked about the firearms in his possession when he was arrested at the school, Spence indicated that after he assaulted Hughes, he had to drive to Norfolk to pick up the guns because that is where he kept them.

Police later interviewed Arielle and Mason King. Spence was identified as the father of Ms. King's son, who reported a relationship with him between 2008 and 2011. The Kings heard from Spence two weeks earlier, when he called wanting to see his son. Prior to that time, they had not heard from him since 2017. Ms. King described a tumultuous relationship with Spence, including physical violence and threats by him to kill her. Spence was known by Ms. King to openly carry a firearm. The Kings were not sure how Spence discovered they were employed at the school.

The Kings showed law enforcement officers a series of electronic messages via social media dated on or about November 24, 2018. The messages, between Spence and Mason King, related to a custody visit Spence requested with his son over the holidays, something the Kings would not consent to. Spence makes a number of threatening comments in the texts, including:

- "The old Steve would have whipped your ass on sight, in front of your wife and children just to humble your ass."

9

- "I've held my tongue to preserve your marriage, don't try me (followed by a smiling face emoticon)."

- "I've done nothing but give you respect and praise. I've kept my distance in order to maintain peace. I've separated myself from the situation because your wife is a nasty bitch and her energy is not worth my time."

- "So let me be clear about something, I'm not going to fuss with your soft punk ass via social media. Ask your wife about me and she'll tell you I don't that fucking a nigga up is my specialty. This is your first and last time addressing me in this tone."

- "I would be careful if I were you, you've taken my kindness for a weakness and that's a huge mistake."

- "I forgive you but if it happens again I will humble you. I will physically whip your ass and share more than you can stomach about your wife to crush whatever ego you have left."

- "Ohh don't back track now. You want to come like billy bad ass and I'll give you a chance to do that in person. That's why you have to watch your mouth and be careful who you speak to. Once again speak to your wife about what I'm capable of. And she only knows a portion of it. I'll pop up when you lease (sic) expect it. Lmao!!!"

Detective Palmenteri was also able to interview Ashley Neville in Durham. She explained that Spence is the father of her son, who was born in 2017. She met Spence through social media and assisted him by designing a logo for a business he was starting. Neville is a graphic designer by profession. Eventually, their professional relationship turned into a romantic relationship and after six or seven months, they moved in together in Virginia. At the time

10

of the interview, Neville was attempting to gain sole custody of their child through the court system.

## **Legal Issues**

### 1. **Photographs and Other Media**

The admissibility of photographs and other media is largely in the discretion of the trial court. *United States v. Moton*, 493 F.2d 30 (5th Cir. 1974). *Willis v. Pennsylvania R. Co.*, 269 F.2d 549, 553 (4th Cir. 1959). A photograph or video is admissible where it is authenticated or verified by some evidence to establish that it is a substantially true and accurate representation of the place, person, or subject it depicts. *See United States v. Clark*, 886 F.2d 65, 68 (4th Cir. 1993).

Under Rule 901 of the Federal Rules of Evidence, this requirement for authentication may be satisfied by testimony of a witness with knowledge that the audio/video recordings or photographs are what they are claimed to be. The burden of authentication under Rule 901 is not high. *United States v. Recio*, 884 F.3d 230, 236-37 (4th Cir. 2018) (*citation omitted*). There need only be a *prima facie* showing to establish that the evidence is what the proponent claims. *United States v. Vidacak*, 553 F.3d 344, 349 (4th Cir. 2009). It is the "district court's role . . . as gatekeeper [to assess] . . . whether the proponent

11

has offered a satisfactory foundation from which the jury could reasonably find that the evidence is authentic." *Id.*; *accord United States v. Hassan*, 742 F.3d 104, 133 (4th Cir. 2014).

In this case, with respect to footage from police-issued body cameras, the government will offer testimony of the person wearing the camera, or a person who had actual knowledge of the scene, to authenticate that the media is a fair and accurate representation of the events recorded. Such testimony satisfies the authentication requirements of Rule 901.

### 2. Prior Bad Acts

The Federal Rules of Evidence provide that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

Fed. R. Evid. 404(b). This rule is one of inclusion and, as such, admits all evidence of other crimes "except that which tends to prove only criminal disposition." *United States v. Powers*, 59 F.3d 1460, 1464 (4th Cir. 1995) (internal quotation marks omitted). Moreover, a district court has great discretion to admit evidence under Rule 404(b). *See, e.g., id.* (holding that such rulings must stand unless "arbitrary or irrational"). The Fourth Circuit has

12

clarified the analysis for the admissibility of prior bad acts under Rule 404(b) as follows:

> (1) The evidence must be relevant to an issue, such as an element of an offense, and must not be offered to establish the general character of the defendant. In this regard, the more similar the prior act is (in terms of physical similarity or mental state) to the act being proved, the more relevant it becomes. (2) The act must be necessary in the sense that it is probative of an essential claim or an element of the offense. (3) The evidence must be reliable. And (4) the evidence's probative value must not be substantially outweighed by confusion or unfair prejudice in the sense that it tends to subordinate reason to emotion in the fact-finding process.

*United States v. Queen*, 132 F.3d 991, 997 (4th Cir. 1997). Certain "additional protection against the pitfalls the Rule protects against may be provided by a limiting jury instruction explaining the purpose for admitting evidence of prior acts." *See United States v. Hornsby*, 666 F.3d 296, 307 (4th Cir. 2012) (quotation, citation, and alterations omitted).

<u>Electronic communications to the Kings</u>

The text messages sent by Spence to the Kings satisfies the mandate of *Queen*. First, evidence related to Spence's threatening messages to the Kings is relevant to the offenses charged, that is, motive and intent to commit a crime of violence upon the Kings, as well as demonstrating that Spence prepared and planned to commit the crime. The messages, which show Spence was

13

angry with the Kings and wished them harm, were sent less than ten days before he is found in Greensboro with firearms looking to do them harm.

Second, such evidence is probative in explaining Spence's purpose for traveling from Virginia to North Carolina on December 3, 2018. He was angry with the Kings and looking for a way in which to exact revenge for a perceived wrong. The messages go directly to proving elements related to Spence's interstate travel to commit a crime of violence against a spouse or intimate/dating partner, in violation of 18 U.S.C. § 2261(a)(1), and brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). The messages corroborate and explain Spence's motivation for wishing to commit a crime of violence upon the Kings due to his perception of being kept from visiting the child he shares with Ms. King.

Third, the evidence is reliable, in that the messages came from a source known to be associated with Spence. The content of the messages themselves add to their reliability. The messages are from a person who is upset with the Kings regarding his son, whose name is referenced, and Spence is the father of Ms. King's child of the same name used. Additionally, Spence's photo is depicted adjacent to the messages.

14

Finally, the evidence is probative because it provides context for the jury to understand Spence's motivation in wishing to drive from another state for the purpose of killing Ms. King, his intent, and plan to commit such an act. Any confusion this may cause the jury with regard to how to use this evidence may be cured with a limiting jury instruction. *See United States v. Fauls,* 821 F.3d 502, 509 (4th Cir. 2016).

Assault on Hughes

Spence's violent assault on Hughes prior to stealing her Mercedes is admissible as it is intrinsic to the charged crimes of carjacking, in violation of 18 U.S.C. § 2119(1); interstate transportation of a stolen motor vehicle, in violation of 18 U.S.C. § 2312. The assault constitutes an element of the carjacking offense and is admissible for that purpose. In order to sustain a conviction for carjacking in this case, the Government must prove that Spence acted with the intent to cause death or serious bodily harm when he took Hughes' Mercedes and that it was taken from her by force and violence. Evidence of the assault on Hughes that immediately preceded his theft goes to the very heart of this element and is admissible.

The assault is also so intrinsically related to the theft and ultimate interstate transportation of a stolen motor vehicle that the events constitute

15

one single criminal event. "[T]he provisions of Rule 404(b) are only applicable when the challenged evidence is extrinsic, that is 'separate' from or 'unrelated' to the charged offense." *United States v. Bush*, 944 F.3d 189, 195 (4th Cir. 2019). The assault constitutes the means by which Spence obtained possession of the Mercedes that he then drove from Virginia to North Carolina for the purpose of killing Neville and the Kings. The assault shows that the Mercedes was taken without Hughes' consent, which goes directly to prove that the Mercedes was in fact stolen, which is an element of the offense as well.

Even though the assault on Hughes is evidence intrinsically related to Spence's criminal offenses, the assault and handwritten note left behind at the scene of the assault satisfy the requirements of *Queen*. The assault and note are relevant to show Spence's motive, plan, intent, and opportunity to commit his crime spree. The list shows his criminal intent towards Neville and Ms. King, literally setting out Spence's plan for criminal activity. The assault gives context and credence to the note left behind as well as demonstrating Spence's motive for stealing Hughes' automobile.

The assault and note are probative in explaining Spence's intent for traveling in a stolen vehicle from Virginia to North Carolina, which goes

16

directly to showing the purpose for crossing state lines was to commit acts of domestic violence.

The evidence is reliable because Hughes will be able to offer direct testimony regarding the assault. Hughes and Neville will also be able to identify the handwriting on the note left behind because of their familiarity with Spence's handwriting. The note's content is further corroborated through Spence's statements during his interview with Detective Palmenteri and the context of his statements and items listed on the note make it reliable.

Evidence of the assault and the note are probative of Spence's motive, plan, intent, and opportunity to commit the offenses charged. Any confusion this may cause the jury with regard to how to use this evidence may be cured with a limiting jury instruction. *See United States v. Fauls,* 821 F.3d 502, 509 (4th Cir. 2016).

17

This the 17th day of July, 2020.

> Respectfully submitted,
>
> MATTHEW G.T. MARTIN
> United States Attorney
>
>
> /S/ VERONICA L. EDMISTEN
> Assistant United States Attorney
> NCSB #31500
> United States Attorney's Office
> Middle District of North Carolina
> 101 S. Edgeworth St., Fourth Floor
> Greensboro, NC 27401
> Phone: 336/333-5351
>
>
> /S/ CLIFTON T. BARRETT
> Assistant United States Attorney
> NCSB #12858
> United States Attorney's Office
> Middle District of North Carolina
> 101 S. Edgeworth St., Fourth Floor
> Greensboro, NC  27401
> Phone:  336/333-5351

18

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| UNITED STATES OF AMERICA | : | SUPERSEDING |
| --- | --- | --- |
| v. | : | 1:19CR54-1 |
| STEVE BRANTLEY SPENCE | : | |

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2020, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system to notify:

Greg Davis, Assistant Federal Public Defender.

    Respectfully submitted,

    MATTHEW G.T. MARTIN
    United States Attorney

    /S/ CLIFTON T. BARRETT
    Assistant United States Attorney
    NCSB #12858
    United States Attorney's Office
    Middle District of North Carolina
    101 S. Edgeworth St., Fourth Floor
    Greensboro, NC  27401
    Phone:  336/333-5351

19

Case 1:19-cr-00054-UA   Document 35   Filed 07/17/20   Page 19 of 19