KeyCite Yellow Flag - Negative Treatment
Distinguished by U.S. v. Bailey, 4th Cir.(N.C.), April 12, 2016

**402 Fed.Appx. 778**
**This case was not selected for publication in the Federal Reporter.**
**Not for Publication in West's Federal Reporter See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Fourth Circuit Rule 32.1 (Find CTA4 Rule 32.1)**
**United States Court of Appeals, Fourth Circuit.**

UNITED STATES of America, Plaintiff—Appellee,
v.
Demetrious Adonis MOORE, a/k/a Meechie, Defendant—Appellant.

No. 09–4175.
|
Argued: Sept. 23, 2010.
|
Decided: Nov. 22, 2010.

**Synopsis**
**Background:** Defendant was convicted in the United States District Court for the District of South Carolina, Henry M. Herlong, Jr., Senior District Judge, of carjacking, extortion, and bank robbery, and he appealed.

**Holdings:** The Court of Appeals held that:

[1] there was sufficient evidence of defendant's intent to seriously harm or kill victim to support his carjacking conviction;

[2] imposition of three-level enhancement for bodily injury to victim was not plain error; and

[3] district court did not plainly err in imposing two-level adjustment for obstruction of justice.

Affirmed in part, vacated in part, and remanded.

West Headnotes (3)

[1] **Robbery**⚖Intent

There was sufficient evidence of defendant's intent to seriously harm or kill victim to support his carjacking conviction, even though defendant and his accomplices were unarmed, and victim was not seriously injured, where defendant and his accomplices had charged victim, grabbed both of his arms, and forced him into back of his car, defendant had punched victim in course of demanding his ATM PIN, and told victim that he would kill him if he was uncooperative, and accomplices threatened to kill victim if he refused to give them money in his possession. 18 U.S.C.A § 2119.

1 Cases that cite this headnote

[2] **Sentencing and Punishment**⚖Bodily injury and degree thereof

Imposition of three-level enhancement for bodily injury to victim was not plain error in carjacking prosecution, even though victim declined to go to hospital, where defendant punched victim once or twice, defendant and his accomplices rushed at victim and forced him into his car, causing multiple dark bruises on his face and laceration above his right eye, victim experienced enough pain for defendant to have felt need to offer him pain medication, and victim testified, "I was mentally and physically tortured by them, as well as by the thought that I may not come alive out of this incident." U.S.S.G. § 2B3.1, 18 U.S.C.A.

1 Cases that cite this headnote

[3] **Criminal Law**⚖Sentencing and Punishment
**Criminal Law**⚖Sentencing proceedings in general

District court did not plainly err in adopting

presentence report's (PSR) finding that defendant made "false statements while under oath regarding his involvement" in offense, thus warranting two-level sentencing adjustment for obstruction of justice, where defendant made no specific objection to obstruction adjustment, and defendant provided no evidence indicating PSR misstated his trial testimony. Fed.Rules Cr.Proc.Rule 32(i)(3)(A), 18 U.S.C.A.; U.S.S.G. § 3C1.1, 18 U.S.C.A.

**\*779** Appeal from the United States District Court for the District of South Carolina, at Greenville. Henry M. Herlong, Jr., Senior District Judge. (6:08–cr–00124–HMH–1).

**Attorneys and Law Firms**

**ARGUED:** Thomas Edward Vanderbloemen, Gallivan, White & Boyd, PA, Greenville, South Carolina, for Appellant. William Jacob Watkins, Jr., Office of the United States Attorney, Greenville, South Carolina, for Appellee. **ON BRIEF:** Garrett M. Heenan, Cadwalader, Wickersham & Taft, LLP, Washington, D.C., for Appellant. W. Walter Wilkins, United States Attorney, Columbia, South Carolina, E. Jean Howard, Assistant United States Attorney, Office of the United States Attorney, Greenville, South Carolina, for Appellee.

Before WILKINSON, Circuit Judge, HAMILTON, Senior Circuit Judge, and ROBERT J. CONRAD, JR., Chief United States District Judge for the Western District of North Carolina, sitting by designation.

**Opinion**

Affirmed in part; vacated and remanded by unpublished PER CURIAM opinion.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

**\*\*1** Defendant Demetrious Moore gave an unfortunate

victim a night he will never forget. For his actions that night, Moore was convicted of carjacking, extortion, and bank robbery. He now appeals the carjacking and bank robbery convictions, as well as the sentence imposed by the district court. For the following reasons, we affirm in part, vacate and remand.

**I.**

On September 9, 2007, Defendant Demetrious Moore and two accomplices accosted a man ("the victim") in the parking lot of the victim's apartment complex. The episode began around 9:45 p.m., when the victim had just returned home from evening prayers. As he got out of his car, Moore and his accomplices rushed at the man, held both his arms, and forced him into the back seat. They took his wallet, cell phone, and car keys, and drove him to a nearby ATM. When the victim resisted disclosing his ATM PIN, Moore struck him once or twice, and the victim eventually capitulated. The assailants withdrew the maximum amount allowed by the machine, $500, and discovered the victim had a significant balance in his account.

Moore and his accomplices demanded more money, and when the victim said he had none on his person, they demanded he write a check. They eventually drove back to the victim's apartment to laptop and checkbooks as the victim waited in the car under the watch of one of the accomplices. They forced him to write out a check for $9,000 to a "John Cummings." Moore put the check in his pocket.

Moore told the victim that they could not release him because they feared he would call the bank, but that they would let him go after they cashed the check in the morning. After a stop at Taco Bell, Moore and his contingent blindfolded the victim and drove him, still in the victim's vehicle, to an Economy Inn. They rented a room and forced the victim into the bathroom. From the comfort of the bathroom that night, he heard his assailants enjoying themselves in the hotel room. They would pull him out when someone needed to use the bathroom and force him back in when finished. During this time, they threatened to kill the victim by tying him up and burning him alive inside his car.

Later that night, Moore and one accomplice took the debit card and withdrew another $500 at a different ATM. That **\*780** night or early the next morning, Moore gave the

victim a Tylenol because he had been hit in the head. The next day, after discovering that there was no branch of National City Bank (the victim's bank) in Greenville, at Moore's direction, the group decided to try a check-cashing store.

After the victim told Moore that he only had one form of identification, his driver's license, and that the bank might thus become suspicious of the $9,000 check, Moore made the victim draft a $4,000 check. Moore and his partners told the victim that if he would cash the check, then they would release him. Moore stayed at the hotel and directed three accomplices to take the victim to cash the $4000 check. The accomplices took the victim to three or four businesses before finally finding a check cashing store, which they believed would accept the check.

**2 They sent the victim inside alone to cash the check. As an incentive to comply, they reminded the victim that they knew where he lived and told him that if he alerted the police, they would have someone kill him. Once inside the store, the victim wrote on his hand "help call police" as a signal to the clerk. The clerk called the police and allowed the victim to enter the secure area of the store with her. The police arrived after about ten minutes and arrested Moore's accomplices outside the store.

In their post-arrest statements, the accomplices named Moore as the leader of their group. The officers noticed bruises, marks, swelling, and a small laceration on the victim's face and called for medical assistance. EMS responded to the scene and examined the victim. Once cleared, the victim declined their offer to transport him to the hospital.

Officers arrested Moore the next day at a motel near the Economy Inn. At the time of his arrest, Moore dropped a crumpled up check, which was the $9,000 check they had forced the victim to make payable to "John Cummings."

Moore was named in a five-count Superseding Indictment charging him with carjacking (Count I); extortion (Count II); bank robbery (Counts III and IV); and attempted robbery of a check cashing store (Count V). On September 11, 2008, Moore went to trial and was found guilty on Counts I, II, and III. On February 11, 2009, the district court sentenced Moore to 480 months in prison and 3 years of supervised release. Judgment was entered on February 18, 2009, and Moore timely appealed on February 19, 2009.

## II.

Moore appeals his bank-robbery conviction (Count III), for which he was sentenced to the statutory maximum twenty years. He argues that there was insufficient evidence to sustain the conviction because the Government failed to prove the bank was FDIC insured. The Government concedes this point on appeal and agrees that Moore's conviction and sentence on Count III should be vacated.

## III.

Moore next appeals his conviction for carjacking (Count I). He contends there was insufficient evidence to support the jury's determination that he acted with the requisite intent to sustain a federal carjacking conviction.

Moore faces a "heavy burden" in contesting the sufficiency of the evidence supporting a jury verdict. *United States v. Abuelhawa,* 523 F.3d 415, 421 (4th Cir.2008) (citation omitted). In resolving issues of sufficiency of the evidence, this Court does not weigh evidence or reassess the fact finder's assessment of witness credibility. *United States v. Sun,* 278 F.3d 302, 313 (4th Cir.2002). Moore's jury conviction **781 must be sustained if, taking the view most favorable to the Government, there is substantial evidence to support the verdict. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Substantial evidence is evidence that a rational trier of fact could have found adequate and sufficient to establish the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Reversal is reserved for the rare case where the prosecution's failure to produce such evidence is clear. *United States v. Jones,* 735 F.2d 785, 791 (4th Cir.1984).

**3 To sustain a conviction for carjacking under 18 U.S.C. § 2119, the Government must prove that the defendant had the specific intent "to cause death or serious bodily harm." This intent element is conditional: "the Government [must] prove beyond a reasonable doubt that the defendant would have at least attempted to seriously harm or kill the driver if that action had been necessary to complete the taking of the car." *Holloway v. United States,* 526 U.S. 1, 12, 119 S.Ct. 966, 143 L.Ed.2d 1 (1999). "[A]n empty threat, or intimidating

bluff, ... standing on its own, is not enough to satisfy § 2119's specific intent element." *Id.* at 11, 119 S.Ct. 966.

Moore argues there was no evidence that he or any accomplice—all unarmed—intended to kill or maim the victim at the time they took his car. He places much emphasis on the fact that no firearm or other weapon was used in the taking of the car. However, the plain language of § 2119 makes no mention of a weapon, but rather requires an intent to kill or cause serious bodily harm. While the lack of a weapon may be a factor the jury considers on the issue of intent, there still may be evidence from which a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781.

[1] In this case, the Government presented testimony from both the victim and Moore's co-defendant that at the moment the defendants stole the victim's car, they charged at him, grabbed both of his arms, and forced him into the back of his car. During the carjacking,· Moore punched the victim in the course of demanding his ATM PIN. A co-defendant testified Moore told the victim that if he was uncooperative, Moore would kill him. Further, some defendants threatened to kill the victim if he refused to give them the money in his possession. As the victim testified, "they said they will tie me in the car and burn the car."

Moore contends there was insufficient evidence of intent. Rather than intending to harm the victim, he argues, they wanted the victim alive and well so that he could make a ATM withdrawal. But Moore's desire for the victim's compliance, so he could transport the victim to multiple locations and steal his money from various venues, says nothing of what Moore would have done had the victim at any point resisted the taking of the car. Moore further contends that he hit the victim only one time, and he points to the victim's trial testimony that "I wasn't seriously injured but they hit me just to frighten me and threaten me many times with my life." **\*782** This statement is taken out of context, however, as the victim also stated, "I was ... mentally and physically tortured by them, ... as well as by the thought that I may not come alive out of this incident." Finally, Moore notes that he provided the victim with Tylenol at the hotel, and that he had an accomplice bring the victim a cup of water when they stopped at Taco Bell. These supposed acts of caretaking simply reflect Moore's treatment of the victim while the victim cooperated; they fail to shed light on the key question the jury was asked to determine: what

Moore would have done if the victim had resisted the taking of the car.

**\*\*4** Faced with this difficult inquiry, the jury found that Moore would have killed or seriously injured the victim if he had resisted Moore's taking of the car. In the light most favorable to the Government, Moore's physical abuse of the victim, paired with his threat to kill the victim if uncooperative, provides sufficient evidence for a rational trier of fact to determine beyond a reasonable doubt that Moore had the intent required by § 2119.

IV.

At sentencing, the district court applied a three-level enhancement for bodily injury pursuant to USSG § 2B3.1(b)(3)(D) and a two-level adjustment for obstruction of justice pursuant to USSG § 3C1.1. Moore maintains these determinations were made in error.

The district court found Moore to have a combined adjusted offense level of 42, with a Criminal History Category of I. His resulting Guidelines range was 360–660 months, and the district court sentenced Moore to 480 months. Moore's trial attorney did not file a sentencing memorandum and did not make written objections to the Presentence Investigation Report ("PSR"). He did make an oral objection at sentencing to the enhancement for use of a minor. When the district court asked Moore whether he had any objections, he stated: "I still don't truly understand how I'm receiving all these enhancements when my co-defendants didn't receive so many." He further expressed displeasure that his Guidelines range was significantly higher than theirs.

Moore argues that this statement, while lacking detail and specificity, clearly implicated the many Sentencing Guidelines enhancements recommended in the PSR. He contends that as a result, he is entitled to *de novo* review regarding his current challenges to the bodily injury and obstruction of justice enhancements. Moore agreed at sentencing that he had enough time to discuss his PSR with his attorney, and before the judge sentenced Moore, Moore told the judge that he had nothing further to say.

The lack of a specific objection to these sentencing determinations "amounts to a waiver" of Moore's right to challenge them on appeal, absent plain error. *United States v. Brothers Const. Co. of Ohio,* 219

F.3d 300, 320 (4th Cir.2000). This Court will only correct plain error if four conditions are present:

> (1) [A]n error, such as deviation from a legal rule; (2) the error must be plain, meaning obvious or, at a minimum, clear under current law; (3) the error must affect substantial rights-in other words, the error must be so prejudicial as to affect the outcome of the proceedings in the district court; and, finally, (4) ... the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

*Id.* (quoting *United States v. Castner,* 50 F.3d 1267, 1277 (4th Cir.1995)).

### A.

Section 2B3.1 of the Guidelines allows a two— to six-level increase in offense **\*783** level if the victim of a robbery sustains bodily injury. The Guidelines suggest that "bodily injury" warrants a two-level increase, "serious bodily injury" warrants a four-level increase, and "permanent or life-threatening bodily injury" warrants a six-level increase. The U.S. Sentencing Commission clarified "bodily injury" as "any significant injury; *e.g.,* an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought." USSG § 1B1.1, comment. (n.1 (B)). "[T]o be 'significant' an injury need not interfere completely with the injured person's life but cannot be wholly trivial and, while it need not last for months or years, must last for some meaningful period." *United States v. Lancaster,* 6 F.3d 208, 209 (4th Cir.1993) (per curiam). "Serious bodily injury" is an "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." USSG § 1B1.1, comment. (n.1(L)). The district court applied a three-level enhancement for bodily injury to the victim in Moore's case, for harm falling between "bodily injury" and "serious bodily injury." *See* USSG § 2B3.1(b)(3)(D).

**\*\*5** [2] The evidence in this case is that Moore punched the victim once or twice and that the defendants rushed at the victim and forced him into his car, causing multiple dark bruises on his face and a laceration above his right eye. The victim experienced enough pain for Moore to have felt the need to offer him pain medication. Further, the victim testified, "I was ... mentally and physically tortured by them, ... as well as by the thought that I may not come alive out of this incident." In addition, EMS was ready to take him to the hospital, but he declined. On this record, the district court did not plainly err in applying a three-level bodily-injury enhancement with respect to Moore's carjacking conviction (Count I).

### B.

Moore also challenges the two-level adjustment for obstruction of justice. Where "a defendant objects to a sentencing enhancement resulting from her trial testimony, a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same, under the perjury definition we have set out." *United States v. Dunnigan,* 507 U.S. 87, 95, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993). Here, the district court did not make specific factual findings as to obstruction of justice.

While Moore voiced a general dissatisfaction with the PSR at his sentencing hearing, he made no specific objection to the obstruction adjustment. Even if he had, "[a] mere objection to the finding in the presentence report is not sufficient. ... Without an affirmative showing the information is inaccurate, the court is 'free to adopt the findings of the [presentence report] without more specific inquiry or explanation.' " *United States v. Love,* 134 F.3d 595, 606 (4th Cir.1998) (quoting *United States v. Terry,* 916 F.2d 157, 162 (4th Cir.1990)). The district court was thus entitled to adopt the PSR's findings. *See* Fed.R.Crim.P. 32(i)(3)(A) ("At sentencing, the court ... may accept any undisputed portion of the presentence report as a finding of fact...."). The PSR noted that this adjustment was proper because Moore made "false statements while under oath regarding his involvement" in the offense.

[3] During the sentencing hearing, the district court

adopted the Guideline calculations from the PSR, ultimately finding that Moore was lying as opposed to incorrectly remembering the events about which he testified. Moore provides no evidence **\*784** indicating the PSR misstated his trial testimony. The district court thus did not plainly err in adopting the PSR's finding and applying the two-level obstruction adjustment with respect to Moore's carjacking conviction (Count I) and his extortion conviction (Count II).

V.

For the reasons set forth above, we affirm Moore's carjacking conviction (Count I) and sentencing enhancements, vacate the bank robbery conviction (Count III) and the portion of his sentence related to it, and remand for resentencing. Such remand is for the limited purpose of imposing Moore's sentence in the absence of his bank robbery conviction.

**\*\*6** *AFFIRMED IN PART; VACATED AND REMANDED.*

**All Citations**

402 Fed.Appx. 778, 2010 WL 4706017

## Footnotes

. The First, Sixth, and Ninth Circuits have held that "the commission of a carjacking continues at least while the carjacker maintains control over the victim and [the victim's] car." *Ramirez–Burgos v. United States,* 313 F.3d 23, 30 n. 9 (1st Cir.2002); *United States v. Vazquez–Rivera,* 135 F.3d 172, 178 (1st Cir.1998); *United States v. Cline,* 362 F.3d 343, 353 (6th Cir.2004); *United States v. Hicks,* 103 F.3d 837, 844 n. 5 (9th Cir.1996) (reasoning that a carjacking continues until the victim is permanently separated from her car).

**End of Document** © 2020 Thomson Reuters. No claim to original U.S. Government Works.